You may begin, Counsel. Good afternoon, Your Honors. May it please the Court, Michael Proe appearing on behalf of Contractors Bonding & Insurance Company, and I would like to reserve three minutes for rebuttal. You may. So the first question in any equitable contribution or subrogation case between carriers is, what was each carrier's contractual duty owed to the common insured? Here, J.P. Whitney is the common insured. That was the named insured under CBIC's policy, but they qualified as an additional insured under the policy issued by AmTrust. If I may interrupt you just quickly on that, do you concede that both the policy for Whitney and the policy for Grassoff contain completed operations coverage? And my apologies, Your Honor. I was explaining when I checked in, my hearing is a little off today because my hearing aid charger broke on the flight down last night and I couldn't charge him last night, so I'm at about 50 percent capacity, and I apologize and ask if you could repeat. I'll repeat it again. Yes. Do both policies that are under consideration today, the policy for the contractor, your policy, and the policy for the sub, do both of those contain completed operations coverage? Do both contain completed operations coverage? I believe generally that's correct. I'm not. Well, it's not generally. I don't think an issue. Right. I don't think that issue was. That's not an issue. Okay. I want to make sure. Thank you. Yeah, I'll double check when I sit down, because I don't think that got argued in the brief one way or the other, but I believe that's correct. Please continue. Yes. And so here the issue is limited to defense. That is, our claim has gone to judgment. It entails who should have borne what portion of the defense. And under California law, do you look to the nature of the underlying complaint or petition in this case to determine whether or not there's a duty to defend? Well, under California law, you would consider both complaint allegations and extrinsic evidence in order to determine duty to defend. But here I don't believe duty to defend is in dispute as under the AmTrust policy for the additional insured. Right. But doesn't the underlying suit, and I'm going to call it a complaint. It's a petition, isn't it? The petition and the other extrinsic evidence suggests that there may be fault, independent fault on behalf of the contractor as well as fault on behalf of the subcontractor. Again, I think the allegations did contain that possibility or the extrinsic evidence did. So I wouldn't disagree with that. But I was getting to the duty to defend provisions under our policies because under our policy, because they were an additional insured entitled to a defense under the AmTrust policy and that defense includes covered and uncovered claims, there was a complete duty to defend under the AmTrust policy and by virtue of the endorsement that J.P. Whitney and CBIC agreed to in our policy where... Counsel, can you hear me? Yes, yes. All right. So when you say a complete duty to defend, I want to make sure I understand it correctly. As I look at the extrinsic evidence and the complaint, just as an example, there was some framing work done and foundation laid before the contract with the sub was ever signed. Is that fair? That's fair. And your view is the sub took on the obligation to defend the general for work that was completed before the sub's contract was signed? I would say AmTrust, by virtue of its additional insured coverage, for J.P. Whitney had a duty to defend both covered and uncovered claims in the case and that's been settled California duty to defend law. In fact, the Presley case that we cited involved an additional insured situation and I believe Padilla, which is recently cited in the 2022 California Pacific case we cited, also involved a scenario where a particular subcontractor carrier was saying we should not have to defend the entire case against the general because the general was sued for various trades. Counsel, let me ask this. The subcontract between the general contractor and MGC, the sub, says that the subcontractor shall not be obligated to indemnify any party for claims arising from the sole negligence or willful misconduct of the owner or the contractor. So as I read it, at least that subcontract contemplates having a carve-out for additional insureds when it comes to the sole negligence of Whitney. Is that a fair reading of it? That would go to the merits of an indemnity cross-claim in the underlying case and not to insurance rights. That would define if there were a cross-claim in the underlying case between the contractor and the subcontractor, the scope of indemnity is often litigated in that context. No, I understand that, but I guess we're trying to reach the question of whether CBIC also has a duty to defend in addition to AmTrust's own duty to defend. If AmTrust were to go bankrupt, would you agree that CBIC would have to step in and cover defense costs? Right, and to read our provision where our endorsement, right, in which it actually tracks pretty standard ISO language so there's nothing tricky or surprising here. We have no duty to defend if an additional insured carrier does, and then the next sentence is if no other insurer defends, we will undertake to do so, but we will be entitled to your rights against those other insurers. So in your scenario, Your Honor, where perhaps an additional insured carrier owed a duty to defend, but for whatever reason it breached or defied or got it wrong or was unable to because of financial insolvency, then I think the second sentence would kick in. We would, in fact, in some capacity, that's what we did here, where AmTrust said we're only paying 50% of the defense. In order for the defense to go forward, we needed to essentially step into the breach and be paying the other 50% under a reservation of rights. But doesn't your policy contemplate, you know, that the coverage is available to you as an additional insured? And if the AmTrust policy does not provide for someone being an additional insured if it's solely the negligence of the contractor, can't you read those provisions together to say that CBIC also has an obligation to defend? Because under certain circumstances where it's only the result of Whitney's actions or omissions, it has the duty to defend. It's not an additional insured, the contractor. And let me respond to that as maybe this is where there's a key distinction between a duty to indemnify and a duty to defend. Because here, if the underlying case played out and there are particular damages that may or may not be within the additional insured coverage, may or may not have been caused by an act or omission of the underlying contractor, right, then there may be an argument on duty to indemnify. I think for duty to defend, which is whole. I mean, a duty to defend in California is if you think of a light switch, it's an on-off switch, right? It's not a dimmer. You don't say, oh, I've got a 30% or a 50%. If you have a duty to defend, you have a duty to defend the case. And given that AmTrust here, by virtue of its additional insured coverage, does owe a duty to defend, means its duty to defend is for the entire case. But I guess my question is, does AmTrust have a duty to defend for actions that are solely caused by the contractor Whitney? It's solely caused by? By Whitney, by the negligence or the actions of Whitney, because its own endorsements carve that out, at least in its contracts. And in the subcontract, they say, no, we don't. Not for defense. Go ahead. I'm sorry. I didn't mean to interrupt that. Just to finish up, you know, its own endorsements are saying Whitney is not an additional insured with respect to claims that arise solely from its own conduct. Right. I think once it's an additional insured, it's a yes-no question. It is the additional insured because it comes within the scope of the endorsement. I'm going to follow up on Judge Sanchez's question, because I'm looking at ER 243 additional insured completed operations. And one of the provisions, as I read it, is saying, this insurance will not apply to essentially anything determined to be solely the result of the general's negligence or solely the general's responsibility. What am I missing here in reading that? If it says this insurance will not apply, doesn't not apply mean duty to indemnify and duty to defend? Well, it certainly means duty to indemnify. Why it doesn't mean duty to defend here is because if you have a duty to defend, a mixed action, both covered and uncovered claims, you have a duty to defend the entire action. And it's no different than Presley where there's other trades. But this says this insurance will not apply. Isn't that different from saying the duty to indemnify will not apply, but as opposed to this insurance will not apply? It says the insurance will not apply to a claim, loss, or liability which is determined to be solely the result of the additional insured's negligence. I suppose if you got to a determination in the end, I think that is a duty to indemnify standard. But the duty to defend standards is set forth in the coverage grant. Once you've satisfied the definition in Section 2, who is an insured, the coverage grant and the policy says we will defend a suit against the insured seeking covered damages. That's why the courts in California since Gray v. Erk and innumerable decisions since have said in a mixed action, covered and uncovered claims, if you have a duty to defend, you have a duty to defend the entire action. But going back to that section that I was talking about in Section 2 of the completed operations section, I read part of it as saying the general is an additional insured but only with respect to liability caused in whole or in part by the sub's work performed for the general. So what that strikes me as doing is taking out the general from the additional insured category entirely for its own work, especially, I mean, public policy-wise for its own work even before the sub's on board. And I understand, I believe, as I mentioned, that goes to duty to indemnify only that it just means there are uncovered claims in the case against JPW under the AmTrust policy and there are covered claims against JPW under the AmTrust policy. And in the presence of the covered and uncovered claim, I'm sorry. When they say covered and uncovered, aren't they meaning as to that insured In other words, that as to an insured, whether it be Whitney or whether it be Grasshoff, that there would be two types of claims, a covered one and an uncovered one. It's not that as to Grasshoff they're covered and they're uncovered as to Whitney. Isn't that what that phrase means? That if, in fact, there are even uncovered claims, allegations against that particular defendant, then you still owe a duty to defend if there are also uncovered claims as well against that particular defendant or insured. And if I may, I think, again, as to the parties here, you're paying a defense lawyer to defend Grasshoff, which I believe AmTrust did, and there's a defense lawyer. For both, I'm sorry, for both covered and uncovered claims as to Grasshoff. Right, right. Got it. And also a duty to defend JPW as to, and again, I refer back to press. Uncovered claims? Are we going to defend JPWhitney as to uncovered claims when there are no, because there are covered claims? So the complaint against JPWhitney had eight or 10 causes of action. You would have a duty to defend JPWhitney, pay his defense counsel, as to that entire complaint, even though some of the claims are uncovered, and that's Pressley, that's, I mean, Buss, the famous case Buss, Jerry Buss. He was facing one covered claim out of 17. And you have a duty to defend the whole case. And so I think the answer is that once you have a duty to, say, qualify as an insured and get within Section 2 who is an insured, absent some further endorsement or some other provision saying otherwise, you go back to the coverage grant, Paragraph 1A of the CGL coverage grant. We have a duty to defend the insured in any suit seeking covered damages. I mean, I understand the point that an insurance company has a duty to defend covered and uncovered claims. It's the public policy of California to broadly protect the insurance. But you're seeking declaratory relief to say that you'll never have a duty to defend or indemnify claims related to Whitney. It would be one thing, in other words, if it were just AmTrust covering the bills for everyone and then the equitably would be sorted out down the road. But your claim for relief is we're out of this altogether. We never have to cover any claims that solely relate to Whitney. Am I misunderstanding that? I don't think that's correct. Our position is that the duty to defend is owed by the additional insured carrier here, which is AmTrust. By virtue of that and our excess other insurance clause, we do not have a duty to defend. But we aren't saying our policy evaporates. We still provide indemnity coverage for the claims that are within the course of the additional insured coverage. We provide excess indemnity. And to the extent our insured is facing direct exposure, there could well be indemnity. So we aren't saying our policy evaporates or disappears. It's not an escape clause. We are still an applicable policy. It's just under this. But you're characterizing it only as excess policy. So if AmTrust were to cover all defense costs and someone were to find Whitney liable for certain claims and damages resulting from that, are you saying that AmTrust could cross-claim against CBIC for that or no? I think you could have a scenario where at the end of the case, if there's been an adjudication or jury verdict form, whatever, allocating fault, then I think you could have a situation where there's a portion of it that we're excess to the extent that JPW is an additional insured under the policy for Grashof. But that's not what you actually argue in your brief, do you? In your brief, I'll speak loudly. In your brief, you state that you're excess for indemnity purposes as well, don't you? Yes. And that's true with respect to the claims within the scope of the additional insured coverage, which is this claim. But, I mean, we're talking about a scenario where if you get to the end of the case and there's a judgment, which didn't happen, so it's hard to discuss hypotheticals. But if you got to the end of the case and there was some breakout, then there might be a different argument on duty to indemnify or indemnity contribution. But we're talking about the coverage provided to JPWhitney under the defense. Judge Sanchez, may I ask one more question? Please, go ahead. So just to be clear, I understand your position, I think, as to what might happen at the end of the case with regard to indemnity. But am I correctly understanding your position that with regard to defense costs, even if at the end of the case the sub is entirely absolved and the general is found liable for everything, that the subs insurer can't get back any defense costs? Well, I mean, it would be an issue of the indemnity rights between the principal parties of whether those are recoverable or not. And you could recover them if you could stand in subrogation, presumably. But as to the question of AmTrust duties to its insured, JPW, no. I think they had a defense so long as there was a potential for coverage and allegations against them by which they qualify as an additional insured. And owing a defense, they owed a full defense until the end of the case. We, as the general contractor's insurer, did not have a duty to defend in this situation. And it's a situation that, you know, as we cited in the briefs, has been recognized and honored in a number of decisions, in a number of published decisions and a number of unpublished decisions as well following, where that structure, where you're named insured coverage becomes access to the additional insurance coverage and, at least eight or ten of these cases, this exact language where if you are entitled to a defense under the additional insured coverage, the name insured policy, we shall have no duty to defend. And the reason that keeps showing up is it's in an ISO form. This isn't some bizarre little trick we sprung on the world. This is a fairly standard provision in commercial general liability policies that where they satisfy the requirements for additional insured coverage and are entitled to a defense, the named insured carrier has no duty to defend. And that's all we have argued and are enforcing here. And, again, the case before the court this afternoon is limited to defense. It's limited to defense issues. And we think the two contractual provisions are black and white. They owe a duty to defend, and our language explicitly provides that we don't in this scenario. Okay. Thank you, counsel. Thank you. Mr. Klausen. Good afternoon. I'm here to please the court, Robert Klausen, for happily antitrust. It's evident to me that the court has read the briefs and reviewed the record thoroughly. I'm sorry if they told me to speak up. My voice might be somewhat faint, so pardon me if I sound like I'm shouting a little bit. And there was a great deal of ground covered in the appellant's reply brief, including many, many cases cited. I think the court will find that those cases do not involve the factual situation and really the exception we have here under the Maryland versus nationwide precedent. They involve vicarious liability between an additional insurer and a named insurer, and what was referred to in the Hartford versus Travelers case as a very limited exception that is grown seemingly without bounds. I can distinguish those cases that the court likes, but I think it might be more constructive to focus on some of the issues that came up during argument with my learned opponent. And in particular, I'd like to go back to the Maryland versus nationwide case, which was considered very factually similar to this case, the facts here by the trial court, and which really does outline the exception, if you will, that governs here based upon the fact that there are, as the court noted, allegations of damages which have nothing to do with the work that was performed by amtrusts named insured grasshoff. So if you were to review the discussion in the nationwide case on page 1091, it not only talks about the fact that the commercial context in which these circumstances arise, where there's a general contractor who hires a number of subcontractors, perhaps does some work itself as subcontractors do other work. It is not commercially reasonable for that so-called excess insurer, the insurer for the general contractor, to expect the subcontractor insurer and additional insurer to provide a defense for the entire action. So it's to conclude that because nationwide... Council, you know, all of this, or maybe not all of it, maybe that's overly optimistic. A fair amount of this could have been avoided if the policy read, for example, we have no duty to defend an additional insured for matters that are solely result of the additional insured's negligence or responsibility. Then we wouldn't even be here, right? I agree, Your Honor, that there's always the possibility that policies could be better written. And certainly I wish that I had written mine, and Mr. Prowl, I'm sure, wishes that he had written his client's policies. But the fact of the matter remains that there's no way to enforce the policy limitation, the excess clause, if you will, in the CBIC policy, without in turn violating the expectations of the parties for the policy language in the antitrust policy. Is there an irremediable conflict between the two? As I asked Mr. Prowl, couldn't one read the CBIC policy to BXS only with respect to when Whitney is an additional insured? And if under the antitrust policy, the general contractor, Whitney, is not an additional insured with respect to its own sole actions, couldn't those two policies be read together in the way that the district court had done? Well, I think that's essentially what the Maryland v. Nationwide court did, Your Honor, and what the district court in turn tried to do here. In other words, the antitrust policy is primary for the liability arising from Grasshop's work, but it was never expected to be primary for the liability that arises from work it had nothing to do with, and in particular the foundation work and the welding work of another subcontractor. That's why there is in this context a situation where CBIC also has a duty to defend, notwithstanding the conclusion that antitrust is primary for Grasshop's work. Well, what do you make of Mr. Prowl's argument that we're not speaking about duty to indemnify, so perhaps antitrust is the only one that's wholly responsible for a duty to defend, but as far as contribution, if any liability is found between the parties, that can be resolved at a later point. What do you say in response to that argument? Well, first of all, Your Honor, the defense issue and the discussion of why the defense costs arising from the independent damages caused by the general contractor should not be imposed on the additional insurer we're discussing in the Maryland v. Nationwide case, but also because there are a variety of reasons why, and this is just from personal experience doing this for 36 years, why we would have a ripple down effect if that were to be the law. There would be a multiplicity of cases where the additional insurer would sue the general contractor for recovery of uncovered defense costs under the bus case. There would be circumstances where absurdity results. For example, if you had a doorknob subcontractor on a large project who was responsible for less than 1% of the alleged property damage claims, and they happened to be the only one that provided additional insurance that potentially applied, they could end up defending the entire case without even the participation of the general contractor's insurer, such as CBIC. Well, they could until the policy language got changed. Yes, that's correct. I would like to hear you address those cases, the Pressley case, as you said, and Buss, to hear your distinctions. Well, the Pressley case was simply a case that indicated that an insurer has a complete duty to defend. It is not a case that says that all other insurers are relieved of their obligation to defend, or a case that discussed excess clauses or escape clauses. It was simply a case that said the additional insurer has a complete duty to defend if no one else defends. The Buss case was simply a California Supreme Court case that gave an insurer the right to sue an insured once it reserves its rights to do so in order to recover defense costs, which it can prove were never even potentially covered under the terms of the policy. And, of course, the beautiful thing about contribution and other insurance cases between carriers, such as CBIC and Amtrust, is that it doesn't drag insureds into the process. So we're focused more on equity in reaching those determinations, and I would respectfully submit that the outcome that CBIC is seeking here is not equitable. And why doesn't Hartford apply in your view? Well, we addressed the Hartford case in detail in the briefs, Judge Sanchez, and it's a case that involved a claim by – it was basically a property manager and a property owner. The liability in that case was almost entirely, or it was entirely, vicarious. There was no slab that had been built before a subcontractor came on to the project. There was no other subcontractor who had allegedly caused a separate category of damage. The damage that resulted was easily determined to be within the additional insured coverage, and in that case, unlike this case, the policies both had the same other insurance clause that said, when there is additional insurance, the additional insurance will be primary, and the named insured coverage will be excess. And the court said it at that point in time, and granted this is almost 20 years ago, that it was carving out a very narrow exception under those circumstances. And, of course, since then, there have been a great many cases that have tried to shoehorn themselves into that exception. But none of those cases really satisfies the criteria we have here, which is where you have conflicting clauses. You can't reconcile the AmTrust and the CBIC clauses about liability incurred by Whittner, when its own independent negligence causes damage that has nothing to do with Grasshoff, or when it hires another subcontractor that causes that type of damage. What happened to the allegations against the other subs in the underlying claim? Aren't there also pending cases? I know the original petition alleged that there were some John Does who were responsible, and then when the general contractor filed the cross-claim, they also included additional subs as well. Are those subs still involved in the underlying claim? Your Honor, my understanding is that the underlying action was settled before any of those determinations were made, and that it is no longer pending. That's correct, Your Honor. Wait. Simply speaking, Your Honor, a judge put that that was never determined. Was there an allocation? Is the underlying suit gone entirely? Yes, Your Honor. Was there a determination of responsibility under that underlying suit? There was not, Your Honor. It settled prior to trial. Okay. So there's no more ongoing duty to defend? This is all fixed, Your Honor. The time during which this appeal has been pending, that case was resolved. And in that settlement, presumably, there was no mention of this matter as well? I believe that all parties released claims unrelated to this case against one another, but that was handled by another attorney in my office. That's correct, Your Honor. The settlement particularly carved out the claim between these two insurers for this issue? The only thing that was carved out, Your Honor, was the additional insured defense cost claim in this action. Well, this is news to us, as you can see. Yes, Your Honor. There's no way for us to put that in the record or to augment the briefs and include that. So my understanding is the reason why this is pending is it's more or less a matter of principle to CBIC. AmTrust certainly wouldn't want precedent that indicates to the contrary for the reasons that I indicated. But essentially, the underlying case is over, and the only remaining piece of it that's pending is the claim for 50 percent defense cost by that CBIC paid against AmTrust. So I understand. Then there won't be a forthcoming adjudication resolving any liability issues between the contractor and the sub since those claims have been settled and released?  Well, because, of course, the district court in this case, in the DEC action, said that you could come back after there was such a determination and reallocate these defense costs based on the allocation of responsibility in the outcome of the underlying suit. And so when you pull that rug out from under everything, it changes. Does it change the perspective? Because now all we're talking about is 50-50. There's no chance that we would reallocate this in any other manner or the district court would reallocate it. I'm not sure if Mr. Crowell disagrees, Your Honor. We haven't, frankly, spoken about that possibility. We've always, I think, viewed this as a 50-50 or nothing. My understanding, counsel, from the way I've read the record is that everybody agreed, and, of course, your friend can speak to this, too, that everybody agreed that if the costs have to be split, 50-50 is fine and that their position, of course, is that you should pay for everything. That's my understanding as well, Judge Bennett. Okay. Anything else, counsel? I have no further, but if I can reserve a minute to respond if anything further is addressed by Mr. Crowell. You don't have the opportunity to respond now. Now is your time to say the last things that you'd like to say. Then I will thank the court for its time and consideration. Thank you. Mr. Crowell, you ran out of time before, but I'll give you a brief moment of time to just have a few comments. Thank you, Your Honor, and a few points to respond to. First, as to the Pressley decision, all I can do is cite the court to it. It very clear and very explicitly says that even a subcontractor with the duty to defend only some of the claims against an additional insurer has to defend the entire case. A lot of carriers might be happy if Pressley got overturned, but given that it's a California state law, state court of appeal case, I'm not sure. It's a proper argument to ask the court to disregard or disagree with Pressley. Second, the Maryland nationwide case we discussed in the briefing. It's an equitable subrogation case. For some reason, the plaintiff carriers did not put their policies in or argue their policy language, so it's hard to know. But because they stood in the shoes of the insured, there's no discussion of the excess other insurance issue. There's no issue of the we have no duty to defend if an additional insured carrier has it. None of that was in the case because the plaintiff carriers solely stood in the shoes of their insured in bringing a claim and just didn't introduce their policies. Third, as to the question of direct liability claims being within the scope of the duty to defend, the landlord, MPOC, in the Hartford case was sued directly on premises liability grounds, was sued because it had a duty to keep its balcony safe and warn people of hazards. And that did not in any way limit the additional insured coverage that MPOC had under the tenant's policy, the travelers, Hartford versus travelers case. Travelers were still entitled to put 100% of the defense on Hartford, notwithstanding those claims. And very lately, the recent California capital, which is a 2022 decision, March 2022 that we cited, also addressed at the end of the decision a question where it was a landlord and a property manager, and the landlord was facing derivative liability claims from the property manager and claiming additional insured status, also allegedly facing a direct claim that the landlord's dog had bitten one of the tenant's children. And the carrier for the property manager said, well, in light of that direct liability claim, don't you, the insurer for the landlord, have a direct duty to defend? And the court of appeals said no. The court of appeals said that because the additional insured carrier for the property manager owed a duty to defend, the named insured carrier for the landlord basically did not and sat in an excess position. And I can cite the exact – it's a – If it's in your brief, we'll be able to find it. Okay, yeah. We cited it twice in our reply brief. It hadn't existed at the time of our opening brief. It was just that recent. But we cited it a couple times in the reply. And I don't think there's anything that unusual or rare about there being, you know, direct liability claims that would not be within the coverage of an AI endorsement. And that doesn't in any way diminish the defense duty of the AI carrier. My learned adversary raised a specter, a parade of horribles, that a 1% sub could end up owing the whole defense on a case. In my 30 years of practice, I'd say that scenario is not as far-fetched as it may seem. It's often the case that subcontractors who feel like they had a relatively small responsibility in a case, their carriers, by virtue of the way this additional insured is structured in this industry, this additional insured coverage is structured, it's not at all unusual for subcontractor carriers to owe a whole defense or a disproportionate share of the defense to what their poor little subcontractor did. And it's what the carriers take on with the policy language they offer. These endorsements do not. You can wrap up your comments. Okay. I'm sorry, Your Honor. But if I could, I have another 20-second point. Otherwise, I'm. Last point very briefly, please. You can make a last point, but very briefly, please. Okay. Very briefly, there was a discussion of our endorsements conflicting, and, you know, they don't. I can cite that ER-287, the amendment to other insurance clause by AmTrust, specifies that it is to be primary insurance for an additional insured. That is an endorsement to specify that point. The amendment of other insurance provision at ER-190 in the CBIC policy is exactly the opposite and says where there's a subcontractor, AI covers where excess. So, in fact, our endorsements are in harmony. They're in complete agreement because that's the way this industry structures its coverage for contractors. Okay. Thank you very much. Thank you. Thank you, counsel. The matter will stand submitted.
judges: BENNETT, SANCHEZ, Foote